SYLVIA BAIZ
California Bar No. 124367
The Granger Building
964 Fifth Avenue, Suite 214
San Diego, California  92101
Telephone:  (619) 544-1410
Facsimile: (619) 544-1473

Attorney for Defendant **Yanez**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HON. ROGER T. BENITEZ)**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | ) Criminal No.  **08-CR-1629-BEN** |
| Plaintiff, | )<br>) Date: June 30,2008<br>) Time: 2:00 p.m. |
| v. | )<br>) |
| **GABRIEL YANEZ AYALA,** | )<br>) **1) COMPEL DISCOVERY; AND** |
| Defendant. | ) **2) DISMISS INDICTMENT;**<br>) **3) SUPPRESS STATEMENTS**; |
| | ) **4) LEAVE TO FILE FURTHER**<br>) **MOTIONS** |

TO:    KAREN HEWITT, UNITED STATES ATTORNEY, AND
         PAUL STARITA, ASSISTANT UNITED STATES ATTORNEY

        **PLEASE TAKE NOTICE** that on June 30, 2008 at 2:00 p.m., or as soon thereafter

as counsel may be heard, the defendant, Gabriel Yanez Ayala by and through his counsel,

Sylvia Baiz, will hereby move this Court for the above-entitled motions.

//

//

//

//

//

//

//

//

1

## MOTIONS

2      The defendant, Juan Gonzalez-Ramirez, by and through his attorney, Sylvia Baiz, and

3 pursuant to Rules 12, 16, 24(a) of the Federal Rules of Criminal Procedure and Rules 404,

4 403, 609 of Federal Rules of Evidence any and all applicable local rules, hereby moves this

5 Court to grant the following motions:

6           1) compel discovery;

7           2) dismiss the indictment;

8           3) suppress statements; and

9           4) leave to file further motions

10      These motions are based upon the attached statement of facts and memorandum of

11 points and authorities, the files and records in the above-captioned matter, and any and all

12 other evidence brought before this Court before or during the hearing on this motion.

13                                          Respectfully submitted,

14

15                                          /s/ Sylvia Baiz_____
Dated: June 17, 2008                        **SYLVIA BAIZ**
16                                          Attorney for Defendant **Gonzalez-Ramirez**

17

18

19

20

21

22

23

24

25

26

27

28

1   SYLVIA BAIZ
    California Bar No. 124367
2   The Granger Building
    964 Fifth Avenue, Suite 214
3   San Diego, California  92101
    Telephone:  (619) 544-1410
4   Facsimile: (619) 544-1473

5   Attorney for Defendant **Yanez**

6

7                 UNITED STATES DISTRICT COURT

8               SOUTHERN DISTRICT OF CALIFORNIA

9                   (**HON. ROGER T. BENITEZ**)

10  **UNITED STATES OF AMERICA**,        ) Criminal No.  **08-CR-1629-BEN**
                                         )
11          Plaintiff,                   ) Date: June 30,2008
                                         ) Time: 2:00 p.m.
12  v.                                   )
                                         ) **STATEMENT OF FACTS AND**
13  **GABRIEL YANEZ AYALA**,             ) **AUTHORITIES IN SUPPORT OF**
                                         ) **DEFENDANT'S MOTIONS**
14                                       )
            Defendant.                   )
15  _____ )

16                          I.

17                  STATEMENT OF FACTS

18          Mr. Yanez was arrested on April 26, 2008 at about 3:30 p.m. about ten miles east of

19  the Tecate port of entry and approximately one mile north of  the U.S./Mexico border,

20  according to agent reports. At about 4:40 p.m. agents attempted to interview Mr. Yanez, who

21  told them he was drunk.  The agents terminated the interview.  Approximately 23 hours later

22  the agents again interviewed Mr. Yanez.  However, they did not read or inform Mr. Yanez of

23  his rights pursuant to Miranda, they had kept him in custody in a locked cell from the time of

24  his arrest and he was feeling sick and hung over.  Mr. Yanez made some incriminating

25  statements.  All of this information is on a dvd which counsel seeks with the court's

26  permission to play and introduce as evidence in a motion to suppress statements.

27          Mr. Yanez was indicted for being found in United States in violation of  8, U.S.C.

28  Sections 1326(a) and (b)**.**

II.

<u>MOTION TO COMPEL DISCOVERY</u>

Mr. Yanez requests the following discovery pursuant to Fed. R. Crim. P. 12(b)(4) and 16:

(1)  all written and oral statements made by Mr. Yanez whether made to law enforcement officers be disclosed.  This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of Mr. Yanez are contained.  It also includes the substance of any oral statements which the government intends to introduce at trial. Mr. Yanez specifically requests that his recorded statements be disclosed.   These are all discoverable under Fed. R. Crim. P. 16(a)(1)(A) and <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  Mr. Yanez also requests any response to any <u>Miranda</u> warnings which may have been given to him.  <u>See</u> <u>United States v. McElroy</u>, 697 F.2d 459 (2d Cir. 1982);

(2)  all documents, statements, agents' reports, and tangible evidence favorable to Mr. Yanez on the issue of **guilt or punishment** and/or which affects the credibility of the government's case. This evidence must be produced pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963), and <u>United States v. Agurs</u>, 427 U.S. 97 (1976);

(3)  all evidence, documents, records of judgments and convictions, photographs and tangible evidence, and information pertaining to any prior arrests and convictions or prior bad acts.  Evidence of prior record is available under Fed. R. Crim. P. 16(a)(1)(B).  Evidence of prior similar acts is discoverable under Fed. R. Crim. P. 16(a)(1)© and Fed. R. Evid. 404(b) and 609;

(4)  all evidence seized as a result of any search, either warrantless or with a warrant, in this case.  He also specifically requests copies of all photographs, videotapes or recordings made in this case.  This is available under Fed. R. Crim. P. 16(a)(1)©;

(5)  all arrest reports, investigator's notes, memos from arresting officers, sworn statements and prosecution reports pertaining to Mr. Yanez, including his "A" file and the recordings of his prior deportation(s).  These are available under Fed. R. Crim. P. 16(a)(1)(B)

2

1   and ©, Fed. R. Crim. P. 26.2 and 12(I);

2        (6)  the personnel file of the interviewing agent(s) containing any complaints of

3   assaults, abuse of discretion and authority and/or false arrest.  Pitchess v. Superior Court, 11

4   Cal. 3d. 531, 539 (1974).  In addition, the defense requests that the prosecutor examine the

5   personnel files of all testifying agents, and turn over Brady and Giglio material reasonably in

6   advance of trial.  United States v. Henthorn, 931 F.2d 29, 30-31(9th Cir. 1991).  If the

7   prosecutor is unsure as to whether the files contain Brady or Giglio material, the files should

8   be submitted to the Court, in camera.  Id.  The prosecution should bear in mind that there

9   exists an affirmative duty on the part of the government to examine the files.  Id.;

10       (7) any and all statements made by any other uncharged co-conspirators. The defense

11  is entitled to this evidence because it is material to preparation for the defendant's case and

12  potentially Brady material.  Also, insofar as such statements may be introduced as

13  co-conspirator statements, they are discoverable. Fed. R. Crim. 16(a)(1)© and Brady.  This

14  evidence must be produced pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and United

15  States v. Agurs, 427 U.S. 97 (1976);

16       (8)  Mr. Yanez requests copies of any and all audio/video tape recordings made by the

17  agents in this case and any and all transcripts, including taped recordings of any

18  conversations of any of the agents involved in this case.  Mr. Yanez specifically requests

19  copies of the audio tape of all the deportation hearings in this case that the government

20  intends to use in its case-in-chief..   This evidence is available under Fed. R. Crim. P.

21  16(a)(1)©;

22       (9)  Mr. Yanez specifically requests the name and last known address of each

23  prospective government witness.   See United States v. Napue, 834 F.2d 1311 (7th Cir.

24  1987); United States v. Tucker, 716 F.2d 583 (9th Cir. 1983) (failure to interview

25  government witnesses by counsel is ineffective); United States v. Cook, 608 F.2d 1175, 1181

26  (9th Cir. 1979) (defense has equal right to talk to witnesses).

27       (10)  all other documents and tangible objects, including photographs, books, papers,

28  documents, photographs, or building or places or copies of portions thereof which are

1  material to Mr. Yanez' defense or intended for use in the government's case-in-chief or were

2  obtained from or belong to Mr. Yanez.  Mr. Yanez also requests access to all his personal

3  belongings seized, including his wallet, any clothes he was wearing at the time of his arrest

4  and any baggage he had with him. Rule 16(a)(1)©;

5       (11) all results or reports of scientific tests or experiments, or copies of which are

6  within the possession, control, or custody of the government or which are known or become

7  known to the attorney for the government, that are material to the preparation of the defense,

8  including the opinions, analysis and conclusions of experts consulted by law enforcement

9  including finger print specialists in the instant case.  These must be disclosed, once a request

10  is made, even though obtained by the government later, pursuant to Fed.R.Crim.Pro.

11  16(a)(1)(D).

12       (12)  any express or implicit promise, understanding, offer of immunity, of past,

13  present, or future compensation, agreement to execute a voluntary return rather than

14  deportation or any other kind of agreement or understanding between any prospective

15  government witness and the government (federal, state and local), including any implicit

16  understanding relating to criminal or civil income tax liability.  United States v. Shaffer, 789

17  F.2d 682 (9th Cir. 1986); United States v. Risken, 788 F. 2d 1361 (8th Cir. 1986); United

18  States v. Luc Levasseur, 826 F.2d 158 (1st Cir. 1987);

19       (13) any discussion with a potential witness about or advice concerning any

20  contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the

21  advice not followed.  Brown v. Duggen, 831 F.2d 1546, 1558 (11th Cir. 1986) (evidence that

22  witness sought plea bargain is to be disclosed, even if no deal struck); Haber v. Wainwright,

23  756 F.2d 1520, 1524 (11th Cir. 1985);

24       (14) any evidence that of any witnesses which were with Mr. Yanez at the time of his

25  arrest or information that any prospective government witness is biased or prejudiced against

26  the defendant, has a motive to falsify or distort his or her testimony or is prejudiced against

27  Mexican people.  Pennsylvania v. Ritchie, 480 S.Ct. 39 (1989); United States v. Strifler, 851

28  F.2d 1192 (9th Cir. 1988);

1    (15) any evidence that any prospective government witness has engaged in any

2    criminal act whether or not resulting in a conviction. See Rule 608(b), Federal Rules of

3    Evidence and Brady;

4    (16) any evidence that any prospective witness is under investigation by federal, state

5    or local authorities for any criminal conduct. United States v. Chitty, 760 F.2d 425 (2d Cir.),

6    cert. denied, 474 U.S. 945 (1985); and,

7    (17) any evidence, including any medical or psychiatric report or evaluation, tending

8    to show that any prospective witness's ability to perceive, remember, communicate, or tell the

9    truth is impaired; and any evidence that a witness has ever used narcotics or other controlled

10   substance, or has ever been an alcoholic. United States v. Strifler, 851 F.2d 1197 (9th Cir.

11   July 11, 1988); Chavis v. North Carolina, 637 F.2d 213, 224 (4th Cir. 1980);

12   (18) the name and last known address of every witness to the crime or crimes charged

13   (or any of the overt acts committed in furtherance thereof) who will not be called as a

14   government witness. Mr. Yanez specifically requests the names of the other three persons

15   arrested with him as they are percipient witness to the manner in which they were arrested.

16   Specifically, Mr. Yanez requests that the I-213s or any other records of their arrests be

17   provided in discovery.   United States v. Cadet, 727 F.2d 1469 (9th Cir. 1984);

18   (19) the name and last known address of each prospective government witness. See

19   United States v. Napue, 834 F.2d 1311 (7th Cir. 1987); United States v. Tucker, 716 F.2d

20   583 (9th Cir. 1983) (failure to interview government witnesses by counsel is ineffective);

21   United States v. Cook, 608 F.2d 1175, 1181 (9th Cir. 1979) (defense has equal right to talk to

22   witnesses);

23   (20) the name of any witness who made an arguably favorable statement concerning

24   the defendant or who could not identify him or who was unsure of his identity, or

25   participation in the crime charged. Jackson v. Wainwright, 390 F.2d 288 (5th Cir. 1968);

26   Chavis v. North Carolina, 637 F.2d 213, 223 (4th Cir. 1980); James v. Jago, 575 F.2d 1164,

27   1168 (6th Cir. 1978); Hudson v. Blackburn, 601 F.2d 785 (5th Cir. 1975);

28   (21) Mr. Yanez requests a transcript of the grand jury testimony and rough notes of

1   all witnesses expected to testify <u>at</u> <u>the</u> <u>motion</u> <u>hearing</u> or at trial.  This evidence is

2   discoverable under Fed. R. Crim. P. 12(I) and 26;

3       (22) <u>Jencks Act Material</u>.  The defense requests all material to which defendant is

4   entitled pursuant to the Jencks Act, 18 U.S.C. § 3500, reasonably in advance of trial,

5   including dispatch tapes.  A verbal acknowledgment that "rough" notes constitute an accurate

6   account of the witness' interview is sufficient for the report or notes to qualify as a statement

7   under §3500(e)(1). <u>Campbell v. United States</u>, 373 U.S. 487, 490-92 (1963).  In <u>United</u>

8   <u>States v. Boshell</u>, 952 F.2d 1101 (9th Cir. 1991), the Ninth Circuit held that when an agent

9   goes over interview notes with the subject of the interview the notes are then subject to the

10  Jencks Act.  The defense requests pre-trial production of <u>Jencks</u> material to expedite cross-

11  examination and to avoid lengthy recesses during the pre-trial motions hearings or trial.  Mr.

12  Yanez specifically requests rough notes regarding the interview of Mr. Yanez, especially if

13  the notes reflect the time and place of those statements.  Mr. Yanez puts the government on

14  notice that he will seek rough notes of any and all testifying agents on the date set for the

15  motion hearing, and requests that the agent/witnesses be instructed to bring the notes to court.

16                                          III.

17  <u>THE INDICTMENT MUST BE DISMISSED OR LIMITED TO A TWO</u>
    <u>YEAR STATUTORY MAXIMUM BECAUSE THE INDICTMENT FAILS</u>
18  <u>TO CHARGE THAT DEFENDANT WAS CONVICTED OF A PRIOR</u>
    <u>FELONY.</u>
19
        In <u>Almendarez-Torres v. United States</u>, 523 U.S. 224, 118 S.Ct. 1219 (1998), a five
20
    Justice majority held that the government can prove the crime of being found in the United
21
    States after deportation without proving the fact of prior conviction.  The fact of the prior
22
    conviction could be proved to the judge during a sentencing hearing without offending the
23
    Fifth or Sixth Amendment of the Constitution.  Soon after <u>Almendarez-Torres</u>, a five-four
24
    decision written by Justice Thomas, the Supreme Court embarked on a series of cases
25
    holding that any fact which increases the maximum punishment must be charged and proven
26
    to the jury beyond a reasonable doubt.  This line of cases began with  <u>Jones v. United States</u>
27
    526 U.S. 227, 119 S.Ct. 1215 (1999), where the Supreme Court addressed the issue of when
28

                                            6

1   disputed factors in a criminal case are considered elements of the offense rather than

2   sentencing factors.  The <u>Jones</u> Court distinguished its opinion in <u>Almendarez-Torres v.</u>

3   <u>United States</u>, 523 U.S. 224, 118 S.Ct. 1219 (1998) stating "the holding last Term [in

4   <u>Almendarez-Torres</u>] rested in substantial part on the tradition of regarding recidivism as a

5   sentencing fact, not as an element to be set out in the indictment."  <u>Jones</u>, 526 U.S. at pp.248-

6   249, 119 S.Ct. at p. 1227.  In so holding, the Supreme Court opined  that "any fact (other than

7   prior conviction) that increases the maximum penalty for a crime must be charged in an

8   indictment, submitted to jury, and proven beyond a reasonable doubt."  <u>Id.</u>, 526 U.S. at p.243

9   n.6, 119 S.Ct. at p. 1224 n.6.  Most important for this Court, however, is that fact that in

10  <u>Jones</u>, Justice Thomas switched sides indicating that the <u>Almendarez-Torres</u> decision was in

11  question since the five Justice majority had been broken and five justices now agreed with

12  the dissent in <u>Almendarez-Torres</u> which opined that prior convictions which raised the

13  maximum possible sentence had to pled and proved to the jury beyond a reasonable doubt.

14  Then in <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S.Ct. 2348 (2000) the Supreme Court

15  announced the constitutional rule that under the Sixth Amendment, any fact that increases the

16  maximum punishment must be proved to the jury beyond a reasonable doubt.  More

17  important for the instant case, Justice Thomas wrote an extensive dissent in which he

18  repudiated his opinion in <u>Almendarez-Torres</u> indicating that if presented with the issues in

19  <u>Almendarez-Torres</u> he would side with the minority thereby tilting the vote and making the

20  <u>Almendarez-Torres</u> minority opinion the majority holding.  <u>Almendarez-Torres</u>, 530 U.S. at

21  520-521; 120 S.Ct. at 2379.  The minority in <u>Almendarez-Torres</u> stated that any fact –

22  whether a fact related to the commission of the charged offense or the fact of a prior

23  conviction – which increases the maximum possible sentence must be proved to the jury

24  beyond a reasonable doubt.  <u>Almendarez-Torres</u>, 523 U.S. at 248-271; 118 S.Ct. at 1233-

25  1244.  The import of this statement is that after <u>Jones</u> and <u>Apprendi</u> a majority of the

26  Supreme Court now is of the opinion that even prior convictions must be pled and proved to

27  a jury beyond a reasonable doubt.

28          The readiness of the Supreme Court to readdress and overrule <u>Almendarez-Torres</u> was

7

made clear this past week in <u>Shepard v. United States</u>, 544 U.S. 13 (2005).  Indeed, it seems

that <u>Almendarez-Torres</u> should already be considered bad law according to Justice Thomas's

concurrence:

> <u>Almendarez-Torres</u>, like <u>Taylor</u>, has been eroded by this Court's subsequent Sixth Amendment jurisprudence, and a majority of the Court now recognizes that <u>Almendarez-Torres</u> was wrongly decided. See 523 U.S., at 248-249, 118 S.Ct. 1219 (SCALIA, J., joined by STEVENS, SOUTER, and GINSBURG, JJ., dissenting); <u>Apprendi</u>, <u>supra</u>, at 520-521, 120 S.Ct. 2348 (THOMAS, J., concurring). The parties do not request it here, but in an appropriate case, this Court should consider <u>Almendarez-Torres</u>' continuing viability. Innumerable criminal defendants have been unconstitutionally sentenced under the flawed rule of <u>Almendarez-Torres</u>, despite the fundamental "imperative that the Court maintain absolute fidelity to the protections of the individual afforded by the notice, trial by jury, and beyond-a-reasonable-doubt requirements." <u>Harris v. United States</u>, 536 U.S. 545, 581-582, 122 S.Ct. 2406  (2002) (THOMAS, J., dissenting).

Thus, it seems clear that the rules of <u>Apprendi</u> through <u>Booker</u> the government must

plead and prove the prior conviction which it seeks to use to enhance Mr. Delgado's

enhancement.  Mr. Delgado believes there are only two possible remedies to the

government's failure to plead the prior conviction: (1) proceed to trial on the current

indictment but limit the conviction to a section 1326(a) conviction with a two year maximum

sentence; (2) dismiss the indictment for failure to charge all the elements.

In <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), the Supreme Court held that "'it is

unconstitutional for a legislature to remove from the jury the assessment of facts that increase

the prescribed range of penalties to which a criminal defendant is exposed.  It is equally clear

that such facts must be established by proof beyond a reasonable doubt.'"  <u>Apprendi</u>, 530

U.S. at 490 (quoting <u>Jones v. United States</u>, 526 U.S. 227, 252-53 (1999) (Stevens, J.,

concurring)); <u>accord Jones</u>, 526 U.S. at 253 (Scalia, J., concurring) ("it is unconstitutional to

remove from the jury the assessment of facts that alter the congressionally prescribed range

of penalties to which a criminal defendant is exposed"); *see also* <u>Mullaney v. Wilbur</u>, 421

U.S. 684 (1975); <u>In re Winship</u>, 397 U.S. 358 (1970).  In reaching that conclusion, the

Supreme Court acknowledged that its previous decision in  <u>Almendarez-Torres v. United</u>

<u>States</u>, 523 U.S. 224 (1998), was at least problematic in that its holding does not seem to

1   comport with the plain constitutional rule announced in Apprendi. *See* Apprendi, 530 U.S. at

2   487 (describing Almendarez-Torres as "represent[ing] at best an exceptional departure from

3   the historic practice we have described"); *see also id.* at 489 ("it is arguable that Almendarez-

4   Torres was incorrectly decided").

5          *Apprendi's* solution to the conflict between its rule and the result in Almendarez-

6   Torres was to treat the latter as an aberrational – and strictly limited – decision addressing

7   only the sufficiency of the indictment in that case.  See Apprendi, 530 U.S. at 487-88.  In

8   short, it represented an odd result owing to its peculiar facts.  In Almendarez-Torres, the

9   defendant was charged with a "found in" section 1326 offense, but his indictment did not

10  allege that he had previously been deported after having suffered aggravated felony

11  convictions.  Almendarez-Torres, 523 U.S. at 227.  Even so, during his guilty plea

12  Almendarez Torres "admitted that he had been deported, and that he had later unlawfully

13  returned to the United States, and that the earlier deportation had taken place 'pursuant to'

14  three earlier 'convictions' for aggravated felonies."  Id.  (quoting from the record).  It was

15  against this highly unusual factual backdrop that Almendarez-Torres analyzed an objection at

16  sentencing that the indictment contained no allegations of the prior convictions -- convictions

17  which the petitioner admitted as part of his guilty plea.

18         Apprendi noted these odd facts, *see* 530 U.S. at 487, concluding that, in light of the

19  admissions under oath, "[b]oth the certainty that procedural safeguards attached to any 'fact'

20  of prior conviction, and the reality that Almendarez-Torres did not challenge the accuracy of

21  that 'fact' in his case, mitigated the due process and Sixth Amendment concerns otherwise

22  implicated in allowing a judge to determine a 'fact' increasing punishment beyond the

23  maximum of the statutory range."  *Id.* at 488.  Thus, "no question concerning the right to a

24  jury trial or the standard of proof that would apply to a contested issue of fact was before the

25  Court" when it rendered its decision in Almendarez-Torres.  Id.  Nor was there any real issue

26  as to the sufficiency of the indictment.  See United States v. Cotton, 535 U.S. 625 (2002).

27  Because Mr. Yanez exercised his Fifth Amendment grand jury right, and his Sixth

28  Amendment right to jury trial, his case squarely presents the issues that Apprendi observed

1    were left open in <u>Almendarez-Torres.</u>  See id.

2         The recent decisions of <u>United States v. Booker</u>, 543 U. S. 220 (2005) and  <u>Blakely v.</u>

3    <u>Washington,</u>542 U.S.296 (2004), reconfirm that <u>Apprendi</u> limits, if not directly overrules,

4    <u>Almendarez-Torres</u> to situations where the individual admits the prior convictions during a

5    guilty plea.  <u>Blakely</u> holds, "[o]ur precedents make clear, however, that the 'statutory

6    maximum' for <u>Apprendi</u> purposes is the maximum sentence a judge may impose solely on the

7    basis of the facts reflected in the jury verdict or admitted by the defendant." <u>Blakely</u>, 124

8    S.Ct. at 2537 (emphasis in original).  See also id. at 2543 ("As <u>Apprendi</u> held, every

9    defendant has the *right* to insist that the prosecutor prove to a jury all facts legally essential to

10   the punishment")(emphasis in original).  The only way to read <u>Blakely</u> as not directly

11   overruling <u>Almendarez-Torres</u>, is by limiting <u>Almendarez-Torres</u> to its facts -- where the

12   individual admits the prior conviction during a guilty plea.

13        "<u>Almendarez-Torres</u>  . . .  stands for the proposition that not every fact expanding a

14   penalty range must be stated in a felony indictment, the precise holding being that recidivism

15   increasing the maximum penalty need not be so charged." <u>Jones v. United States</u>, 526 U.S.

16   227, 248 (1999); <u>accord Apprendi</u>, 530 U.S. at 487-88.  That "precise holding" cannot stand

17   in light of <u>Blakely</u>, <u>Apprendi</u> and the Fifth and Sixth Amendment right to indictment by a

18   Grand Jury.   A majority of Justices agree that <u>Almendarez-Torres</u> does not survive

19   <u>Apprendi</u>.  In <u>Apprendi</u>, the majority asserted that "it is arguable that *A*<u>lmendarez-Torres</u> was

20   wrongly decided," *A*<u>pprendi</u>, 530 U.S. at 489.  More importantly, Justice Thomas, who cast

21   the fifth and deciding vote in <u>Almendarez-Torres</u>, has admitted that his vote was erroneous.

22   <u>Apprendi</u>, 530 U.S. at 518-20 (Thomas, J., concurring).  Even the *A*<u>pprendi</u> dissent

23   recognized that <u>Almendarez-Torres</u> cannot be followed without disregarding <u>Apprendi</u>.  <u>See</u>

24   <u>Apprendi</u>, 530 U.S. at 535 (O'Connor dissenting) ("<u>Almendarez-Torres</u> constituted a clear

25   repudiation of the rule the Court adopt[ed in <u>Apprendi</u>]"); *accord id.* at 559 (the distinction

26   between the section 1326 scheme at issue in <u>Almendarez-Torres</u> and the New Jersey scheme

27   at issue in *Apprendi* is "a difference without constitutional significance").  <u>Almendarez-</u>

28   <u>Torres</u> no longer commands a majority of the members of the Court, *see id.* at 518-20

1   (Thomas, J., concurring), and Justice O'Connor, joined by Chief Justice Rehnquist and

2   Justices Kennedy and Breyer, has recognized that <u>Apprendi</u> and <u>Almendarez-Torres</u> cannot

3   be reconciled.  See id. at 535 (O'Connor dissenting).  Moreover, the Court has recently

4   indicated a desire to directly overrule <u>Almendarez-Torres</u> and reconcile the cases requiring

5   that any and all facts which increase the maximum punishment must be pled and proven

6   beyond a reasonable doubt to a jury.

7          The Supreme Court has long made it clear that the indictment must both contain all of

8   the elements of the offense and give the defendant notice.  See, e.g., <u>Russell v. United States</u>,

9   369 U.S.  749, 763-64 (1962)("the indictment [must] contain[] the elements of the offense

10  intended to be charged, and sufficiently apprize[] the defendant of what he must be prepared

11  to meet") (internal quotations, citations omitted); <u>accord</u> <u>Stirone v. United States</u>, 361 U.S.

12  212, 216-19 (1960).  The Fifth and Sixth Amendment rights discussed in Russell are

13  applicable to all elements: "The Court has not suggested in its previous opinions . . . that

14  there is a difference . . . between, on the one hand, a right to a jury determination, and, on the

15  other, a right to notice by indictment and to a determination based upon proof by the

16  prosecution beyond a reasonable doubt."  <u>Jones</u>, 526 U.S. at 269 (Kennedy, J., dissenting).  In

17  short, if there is a right to jury trial as to a particular element, there is also a right to a Grand

18  Jury determination of probable cause and notice.

19         Indeed, <u>Apprendi</u> itself makes clear that there should be no dichotomy between jury

20  trial rights and Grand Jury rights.  The historical precedent upon which <u>Apprendi</u> relies

21  squarely supports the proposition that any fact which increases the statutory maximum must

22  not only be submitted to the jury and proved beyond a reasonable doubt, it must also be

23  alleged in the indictment.  See <u>Apprendi</u>, 530 U.S. at 478 (<u>citing</u> J. Archbold, Pleading and

24  Evidence in Criminal Cases 44 (15th ed. 1862) and 4 Blackstone 369-70); see also <u>id</u>. at 480

25  ("Just as the circumstances of the crime and the intent of the defendant at the time of

26  commission were often essential elements to be alleged in the indictment, so too were the

27  circumstances mandating a particular punishment"); <u>Ex Parte Bain</u>, 121 U.S. 1, 12-13 (1887)

28  ("We are of the opinion that an indictment found by the grand jury was indispensable to the

11

1  power of the court to try the petitioner for the crime with which he was charged").  In short,

2  "'the indictment must contain an allegation of every fact which is legally essential to the

3  punishment to be inflicted.'"  Id. at 489 n.15 (quoting United States v. Reese, 92 U.S. 214,

4  232-33 (1875) (separate opinion of Clifford, J.)); accord United States v. Hooker, 841 F.2d

5  1225, 1228 (4th Cir. 1988) (observing that "[i]t is elementary that every ingredient of [a]

6  crime must be charged in the bill" and collecting cases) (internal quotations omitted).

7          Blakely reaffirmed this historical precedent.  See Blakely, 124 S. Ct. at 2536 (stating

8  that the Apprendi rule "reflects two longstanding tenets of common-law criminal

9  jurisprudence: that the 'truth of every accusation' against a defendant 'should afterwards be

10  confirmed by the unanimous suffrage of twelve of his equals and neighbors,' 4 W.

11  Blackstone, Commentaries on the Laws of England 343 (1769), and that 'an accusation which

12  lacks any particular fact which the law makes essential to the punishment is ... no accusation

13  within the requirements of common law, and it is no accusation in reason.' 1 J. Bishop,

14  Criminal Procedure § 87, p. 55 (2d ed. 1872)").  There is no basis for failing to apply this

15  reasoning to the fact of prior conviction.  See Apprendi, 530 U.S. at 505 (Thomas, J.,

16  concurring); accord Almendarez-Torres, 523 U.S. at 248-60 (Scalia, J., dissenting).

17          The Fifth Amendment of the United States Constitution "requires that a defendant be

18  convicted only on charges considered and found by a grand jury." United States v. Du Bo,

19  186 F.3d 1177, 1179 (9th Cir. 1999).  An indictment's failure to allege an essential elements

20  of the charged offense "is not a minor or technical flaw subject to harmless error analysis, but

21  a fatal flaw requiring dismissal of the indictment."  Id.  In Du Bo, the indictment failed to

22  allege an implied *mens rea* requirement.  That failure was fatal to the indictment.  See Id., at

23  1179-81.  "The complete failure to charge an essential element of a crime ... 'is by no means

24  a mere technicality.'" Id., at 1180 (quoting United States v. King, 587 F.2d 956, 963 (9th Cir.

25  1978)).

26          Due to the lack of the requisite *mens rea*, the Ninth Circuit found that the indictment

27  was defective in two fundamental ways.  First, because it lacked an element, the Du Bo court

28  could not be sure that the jury convicted on the same facts presented to the Grand Jury.  Id.,

1    at 1179.  The Du Bo court could "only guess whether the grand jury received evidence of,

2    and actually passed on, Du Bo's intent."  Id.  Second, absent the *mens rea* allegation, the

3    indictment "lacks a necessary allegation of criminal intent, and as such does not 'properly

4    allege an offense against the United States.'"  Id., at 1180 (quoting United States v. Morrison,

5    536 F.2d 286, 289 (9th Cir. 1976)).  A complete failure to allege an element is generally a

6    fatal defect.  Id.  In Du Bo, the Ninth Circuit held that the failure to allege the mens rea

7    requirement was such a defect.  Id.  It therefore ordered the indictment dismissed.  Id., at

8    1180-81.

9          The Ninth Circuit reiterated the holding  that "indictment's failure to 'recite an

10   essential element of the charged offense is not a minor technical flaw. . . but a flaw requiring

11   dismissal of the indictment.'"  United States v. Pernillo Fuentes, 252 F.3d 1030 (9th Cir.2001),

12   citing United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999).  In Pernillo Fuentes, the

13   government charged the defendant with attempted entry, but did not allege the specific intent

14   element as required by Gracidas-Ulibarry, 231 F.3d 1188 (9th Cir. 2000 (en banc).  As a

15   consequence, the Ninth Circuit reversed Pernillo Fuentes' conviction and ordered that the

16   indictment be dismissed.

17         The indictment here is defective because it fails to allege that Mr. Delgado was

18   deported subsequent to an aggravated felony (or any felony)  Thus, the indictment as returned

19   clearly fails to charge a violation of section 1326(b).   Mr. Yanez requests that the indictment

20   be dismissed due to this structural omission for failing to allege an element of the offense,

21   i.e., that he was deported or removed subsequent to and aggravated felony (any felony).  In

22   the alternative, if Mr. Yanez is forced to proceed to trial based on the indictment as it exists

23   and he is convicted, the conviction would be limited to a conviction under section 1326(a)

24   which provides a maximum sentence of two years. Because the government has not alleged

25   either a section 1326(b)(1) or 1326(b)(2), the maximum that Mr. Yanez should receive at

26   sentencing is two years.

27

28

13

1
2
3

IV.
<u>MR. YANEZ'S STATEMENTS MUST BE SUPPRESSED AS THEY WERE IN
VIOLATION OF MIRANDA, WERE INVOLUNTARY AND WERE BEYOND THE
SAFE-HARBOR RULE</u>.

4
5
6
7

Mr. Yanez was questioned upon his arrest by agents and again 20 hours later after he had allegedly sobered up.  He was not advised of his right pursuant to <u>Miranda</u> and he was ill as he was hung over when agents questioned him the next day on April 27, 2008, 20 hours after their first attempt to interview him. During the waiting period of 20 hours, Mr. Yanez was locked in a cell.

8

**A. Miranda Violation**

9
10
11
12
13
14
15
16
17
18
19
20

It is the government's burden, upon challenge by the defendant, to establish the admissibility of any custodial statement obtained from a defendant.  Mr. Gonzalez puts the government to its proof on this issue.  Custodial interrogation conducted to secure incriminating statements from an accused must be preceded by procedural safeguards. <u>Miranda v. Arizona</u>, 348 U.S. 437 (1966).  Once a person is in custody, Miranda warnings must be given before any interrogation.   "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to . . . counsel." <u>Miranda v. Arizona</u>, 384 U.S. at 475.  No evidence or statement obtained through a custodial interrogation may be used at trial unless and until the government demonstrates that the defendant received Miranda warnings prior to the statement and validly waived her rights.  Id.  384 U.S. at 479.

21
22
23
24
25
26
27

If the government contends that Mr. Gonzalez waived his Fifth Amendment rights, it must prove that he did in fact waive his rights.  The government's burden, in proving a valid waiver of <u>Miranda</u>, is high.  384 U.S. at 475.  This Court must "indulge every reasonable presumption against waiver" of Miranda rights. <u>United States v. Heldt</u>, 745 F.2d 1275, 1277 (9th Cir. 1984).  The validity of the waiver "depends . . . 'upon the particular facts and circumstances surrounding [the] case, including the background, experience and conduct of the accused.'" <u>Edwards v. Arizona</u>, 451 U.S. 477, 482, reh'g denied, 452 U.S. 973 (1981)

28

1  (quoting <u>Johnson v. Zerbst</u>, 304 U.S. 458, 464 (1938)).

2      In addition to proving <u>Miranda</u> warnings and a valid waiver, the government must

3  also establish, by a preponderance of evidence, that any statement was given voluntarily.

4  <u>Lego v. Twomey</u>, 404 U.S. 477, 484 (1972).  This is a separate requirement:  a confession

5  admitted in violation of <u>Miranda</u> violates a defendant's Fifth Amendment right against

6  self-incrimination and his Sixth Amendment right to counsel; a coerced confession also

7  violates a defendant's right to due process of law.  See <u>Jackson v. Denno</u>, 378 U.S. 368, 376

8  (1964).

9      A voluntary statement is one which is the product of a "rational intellect" and a "free

10  will."  <u>Blackburn v. Alabama</u>, 361 U.S. 199, 208 (1960).  No one factor is determinative.

11  Rather, this Court must look to the "totality all of the surrounding circumstances."

12  <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 226 (1973).  Among the many factors which the

13  Court can weigh is the age of the accused, his education and intelligence, advice as to

14  constitutional rights, length of detention, repeated and prolonged nature of the questioning

15  and use of physical punishments.  412 U.S. at 226.  A statement may not be admitted if

16  because of mental illness, drugs, or intoxication, the statement was not the product of a

17  rational intellect and a free will.  <u>Gladden v. Unsworth</u>, 396 F.2d 373, 380-81 (9th Cir.

18  1968).

19      When law enforcement officers use psychological pressure to break down the will of

20  an accused, all statements elicited thereby are deemed involuntary.  See <u>Spano v. New York</u>,

21  360 U.S. 315 (1959).  A confession is involuntary whether it occurs by physical intimidation

22  or psychological pressure.  <u>Townsend v. Sain</u>, 307 U.S. 293 (1963).  Subtle psychological

23  coercion, either by promises of leniency or indirect threats, may also render a confession

24  involuntary.  <u>United States v. Tingle</u>, 658 F.2d 1332, 1335 (9th Cir. 1981).

25      In the instant case, Mr. Yanez made several statements after his arrests.  He was in

26  custody almost 24 hours at the time the agents took his statements.  He was not advised of

27  his rights pursuant to Miranda after he allegedly sobered up almost 24 hours after his arrest.

28  Therefore, the government bears the burden of proving that Mr. Gonzalez:  1) was fully

1    advised of his Miranda rights;  2) freely, voluntarily and knowingly waived these rights; and

2    3) made the statement freely and voluntarily and whether the statements were suppress

3    because they were beyond the 6-hour safe  harbor rule required by section 18 U.S.C. §3501.

4    **B.  Violation of the Safe-Harbor Rule**

5         The due process voluntariness test takes into account the totality of the

6    circumstances to examine "whether a defendant's will was overborne by the circumstances

7    surrounding the giving of a confession."  Id. citing Dickerson v. United States, 530 U.S. 428,

8    434, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000).  In this regard, 18 U.S.C. § 3501(b) requires

9    that the following factors be considered in determining the voluntariness of a confession:

10       (1) [T]he time elapsing between arrest and arraignment of the defendant making the
         confession, ... (2) whether such defendant knew the nature of the offense with which he
11       was charged or of which he was suspected at the time of making the confession, (3)
         whether or not such defendant was advised or knew that he was not required to make any
12       statement and that any such statement could be used against him, (4) whether or not such
         defendant had been advised prior to questioning of his right to the assistance of counsel;
13       and (5) whether or not such defendant was without the assistance of counsel when
         questioned and when giving such confession.  18 U.S.C. § 3501(b).
14

15   In United States v. Gamez, 301 F. 3d 1138, 1144 (9th Cir. 2002)  the court looked to the

16   reasons for the 31-hour delay in arraignment and found that the delay was caused by agents',

17   waiting for a Spanish speaking interpreter before questioning the defendant, was reasonable.

18   Section 3501© creates a six-hour "safe harbor" during which a confession will not be

19   excluded because of delay.  United States v. Alvarez-Sanchez, 975 F.2d 1396, 1399-1400

20   (9th Cir.1992), rev'd on other grounds, 511 U.S. 350, 114 S.Ct. 1599, 128 L.Ed.2d 319

21   (1994).

22   Alvarez-Sanchez, id.1402, is instructive as it contains an extensive analysis regarding the

23   relationship between the section Title 18 U.S.C. §3501(its history) and the voluntariness of a

24   defendant's statements. [1/] The Court, in Alvarez-

25   _____

26       [1]  Title 18 U.S.C §3501 provides, in pertinent part, (a) In any criminal prosecution brought
     by the United States or by the District of Columbia, a confession, as defined in subsection (e)
27   hereof, shall be admissible in evidence if it is voluntarily given. Before such confession is
     received in evidence, the trial judge shall, out of the presence of the jury, determine any issue
28

Sanchez suggested an approach to analysis of § 3501 recognizes that, while sections (a) and

© are facially incompatible, they can best be understood by construing section (a) to address

concerns regarding a confessor's free will and section © to address concerns regarding delay

in arraignment.   Such a construction is most consistent with the legislative history, which

demonstrates:  (1) that section (a) was enacted in light of congressional concern over the

as to voluntariness. If the trial judge determines that the confession was voluntarily made it
shall be admitted in evidence and the trial judge shall permit the jury to hear relevant
evidence on the issue of voluntariness and shall instruct the jury to give such weight to the
confession as the jury feels it deserves under all the circumstances.

(b) The trial judge in determining the issue of voluntariness shall take into
consideration all the circumstances surrounding the giving of the confession, including (1)
the time elapsing between arrest and arraignment of the defendant making the confession, if
it was made after arrest and before arraignment, (2) whether such defendant knew the nature
of the offense with which he was charged or of which he was suspected at the time of making
the confession, (3) whether or not such defendant was advised or knew that he was not
required to make any statement and that any such statement could be used against him, (4)
whether or not such defendant had been advised prior to questioning of his right to the
assistance of counsel; and (5) whether or not such defendant was without the assistance of
counsel when questioned and when giving such confession.  The presence or absence of any
of the above-mentioned factors to be taken into consideration by the judge need not be
conclusive on the issue of voluntariness of the confession.

(c) In any criminal prosecution by the United States or by the District of Columbia, a
confession made or given by a person who is a defendant therein, while such person was
under arrest or other detention in the custody of any law-enforcement officer or
law-enforcement agency, shall not be inadmissible solely because of delay in bringing such
person before a magistrate judge or other officer empowered to commit persons charged with
offenses against the laws of the United States or of the District of Columbia if such
confession is found by the trial judge to have been made voluntarily and if the weight to be
given the confession is left to the jury and if such confession was made or given by such
person within six hours immediately following his arrest or other detention: Provided, That
the time limitation contained in this subsection shall not apply in any case in which the delay
in bringing such person before such magistrate judge or other officer beyond such six-hour
period is found by the trial judge to be reasonable considering the means of transportation
and the distance to be traveled to the nearest available such magistrate judge or other officer.

1  Supreme Court's holding in <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d

2  694 (1966), that confessions should be suppressed in certain circumstances without finding

3  "the defendants' statements to have been involuntary in traditional terms," <u>id</u>. at 457, 86 S.Ct.

4  at 1618.   <u>See</u> <u>United States v. Robinson</u>, 142 U.S.App.D.C. 43, 439 F.2d 553, 562-63

5  (1970);  <u>id</u>., 439 F.2d at 574 n. 18 (McGowan, J., dissenting);  S.Rep. (Judiciary Committee)

6  No. 1097, <u>reprinted in</u> 1968 U.S.C.C.A.N. 2112, 2123- 40, 2282, and (2) that section © was

7  appended to the statute to address the <u>McNabb-Mallory</u> rule, <u>see</u> 114 Cong.Rec. 14,184-86. [2]/

8  Given this history, and the fact that pre-arraignment delay is the exclusive subject of section

9  ©, the approach concludes that it is **that** section that incorporates Congress' intent with

10  regard to the admission of confessions made during an unreasonable delay in arraignment.

11  As the Second Circuit has stated it,

12      the addition of subsection © on the Senate floor effectively codified a limited <u>McNabb-
13      Mallory</u> rule.   Stated another way, section 3501 legislatively overruled the <u>McNabb-
        Mallory</u> rule only to the extent of (1) unreasonable pre-arraignment, pre-confession delays
14      of less than six hours and (2) reasonable delays in excess of six hours.

15  <u>See</u> <u>United States v. Perez</u>, 733 F.2d 1026, 1034, 1035 (2d Cir.1984) (discreetly describing

16  interpretation of the act as "somewhat murky").   "Accordingly, a confession outside the

17  section © safe harbor is subject to the McNabb-Mallory rule, which mandates exclusion if

18  the delay in arraignment is unreasonable. " <u>Alvarez Sanchez</u> at 1402-1403.   This approach

19  is recommended by most commentators, <u>see</u>, <u>e.g.</u>, 3 J. Wigmore, Evidence § 862(a), at 623

20  (Chadbourn rev. 1970) (stating that § 3501 retains the <u>McNabb-Mallory</u> rule with regard to

21  confessions obtained outside of the section © safe harbor);  8 J. Moore, Moore's Federal

22  Practice ¶ 5.02[2], at 5-13--5-15 (2d ed. 1992) (same), and has been adopted by the Second

23  _____

24      [2]  Nearly fifty years ago, the Supreme Court determined that one appropriate
25  remedy for violations of Rule 5(a) is to suppress confessions obtained during an
    unnecessary delay in arraignment.  <u>See</u>  <u>McNabb v. United States</u>, 318 U.S. 332,  341,
26  63 S.Ct. 608, 613 (1943).  In a line of decisions culminating in <u>Mallory v. United</u>
    <u>States</u>, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957), the Supreme Court
27  adopted a general exclusionary rule that rendered inadmissible all confessions
28  obtained during a detention in violation of Rule 5(a).

1   and District of Columbia Circuits, see Perez, 733 F.2d at 1035; United States v. Robinson,

2   142 U.S.App.D.C. 43, 439 F.2d 553, 563-64 (1970). Alvarez Sanchez at 1402-03.

3       The Court's more recent decision in United States v. Padilla-Mendoza , 157 F.3d 730,

4   732 (9th Cir. 1998) holding that an eight hour delay before interrogation which caused a delay

5   in arraignment was reasonable, is distinguishable. There Padilla, was arrested at 6:30 a.m,

6   but not interviewed until 2:15 p.m during which he confessed. After processing he was taken

7   to see a magistrate for arraignment the following day. The Court held the delay was

8   reasonable because it was "...primarily due to distance and means of transportation to the

9   nearest available magistrate." Id.

10      In Mr. Yanez's case, he was arrested on April 26, 2008 at about 3:30 p.m. and kept in

11   custody in a cell for almost 24 hours before his statements were taken. Agents knew that he

12   had been drunk and even attempted to interview him upon his arrest. Thus they kept him in

13   custody and attempted to interview him again almost 24 hours later when they believed he

14   was no longer drunk.

15      To establish the legality and admissibility of the defendant's statements, the government

16   must show compliance with Miranda v. Arizona and establish by a preponderance of the

17   evidence that the defendant's statement was given voluntarily. An evidentiary hearing in this

18   matter is thus necessary. United States v. Batiste, 868 F.2d 1414 (9th Cir. 1989) (holding

19   that a district court has complete discretion to hold an evidentiary hearing whenever a Fourth

20   Amendment violation is alleged and in footnote 5, implying that an evidentiary hearing must

21   be held if a Fifth Amendment violation is alleged). In addition, Title 18 U.S.C. §3501

22   requires a hearing on voluntariness prior to the admission of any defendants' statement. At

23   the hearing Mr. Yanez will introduce the dvd demonstrating the facts he has set forth in the

24   instant motion. Based on these facts, he respectfully requests that all of his statements to

25   agents be suppressed.

26                                         V.

27                    MOTION FOR LEAVE TO FILE FURTHER MOTIONS

28   Mr. Yanez has filed all motions he deems to be relevant at this time. However, he requests

                                          19

1  permission to reserve the right to file further motions in response to additional discovery,

2  investigation or documents filed by the government, including his recorded statements, his

3  A-file and recorded deportation hearing.

4                                      VI.

5                                 <u>CONCLUSION</u>

6      For the above stated reasons, it is respectfully requested that the Court grant the above

7  motions.

8                              Respectfully submitted,

9

10
                              /s/ Sylvia Baiz
11  Dated: June 17, 2008       SYLVIA BAIZ
                              Attorney for Defendant **Yanez**
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    UNITED STATES DISTRICT COURT

2    SOUTHERN DISTRICT OF CALIFORNIA

3

4    **UNITED STATES OF AMERICA**,          ) Criminal No. **08-CR-1629-BEN**
                                          )
5                Plaintiff,               )
                                          )
6    v.                                   )          PROOF OF SERVICE
                                          )
7    **GABRIEL YANEZ AYALA**              )
                                          )
8                Defendant.               )
     _____ )

9

10   IT IS HEREBY CERTIFIED THAT:

11          I, SYLVIA BAIZ, am a citizen of the United States and am at least
     eighteen years of age.  My business address is 964 Fifth Avenue, Suite 214, San Diego,
12   California, 92101.

13          I am not a party to the above-entitled action.  I have caused service of the
     **NOTICE OF MOTIONS AND MOTIONS; STATEMENT OF FACTS AND
14   MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
     DEFENDANT'S MOTIONS** on the following parties by electronically filing the foregoing
15   with the clerk of the District Court using its ECF System, which electronically notifies them.

16          Judge Roger T. Benitez efile_Benitez@casd.uscourts.gov.

17          Assistant United States Attorney Paul.Starita@usdoj.gov

18          I declare under penalty of perjury that the foregoing is true and correct.

19   Executed on June 17, 2008

20

21                         /s/   Sylvia Baiz
                           SYLVIA BAIZ
22

23

24

25

26

27

28