KAREN P. HEWITT
United States Attorney
PAUL L. STARITA
Assistant U.S. Attorney
California State Bar No. 219573
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6507
Email: paul.starita@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GABRIEL YANEZ-AYALA,<br><br>Defendant. | Criminal Case No. 08CR1629-BEN<br><br>DATE: September 12, 2008<br>TIME: 2:00 p.m.<br><br>UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO:<br><br>(1) COMPEL DISCOVERY;<br>(2) DISMISS INDICTMENT;<br>(3) SUPPRESS STATEMENTS; AND<br>(4) GRANT LEAVE TO FILE FURTHER MOTIONS<br><br>TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES |

COMES NOW, the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and Paul L. Starita, Assistant United States Attorney, and hereby files its Response and Opposition to Defendant's above-referenced motions together with Statement of Facts and Memorandum of Points and Authorities. This Response and Opposition is based upon the files and records of the case.

//

//

//

//

**I**

**STATEMENT OF THE CASE**

On May 21, 2008, a federal grand jury in the Southern District of California returned a one-count Indictment charging Defendant with deported alien found in the United States, in violation of Title 8, United States Code, Section 1326. Defendant was arraigned on the Indictment on May 22, 2008, and he entered a plea of not guilty.

**II**

**STATEMENT OF THE FACTS**

**A. INSTANT OFFENSE**

On April 26, 2008, at approximately 3:30 p.m., United States Border Patrol Agent ("BPA") Ayon was performing line watch duties in the Campo, California area of operations. In responding to the activation of a seismic intrusion device, BPA Ayon found footprints and tracked them until he found five individuals attempting to conceal themselves in brush approximately ten miles east of the Tecate, California, Port of Entry, and one mile north of the United States - Mexico boundary. After making contact with these individuals, BPA Ayon immediately identified himself as a BPA and questioned all of the individuals as to their citizenship. Each of these individuals, including Defendant, admitted to entering the United States illegally and to being citizens and nationals of Mexico. Defendant and the other individuals were arrested and transported to the Campo Border Patrol Station for processing.

**B. POST-MIRANDA STATEMENT**

At approximately 8:40 p.m., BPA Franco began the process of conducting a videotaped interview of Defendant but ceased the process when he learned that Defendant was under the influence of alcohol. Defendant was given the opportunity to "sober up" before reinitiating the videotaped interview.

On April 27, 2008, at approximately 4:35 a.m., BPA Gallegos, in the Spanish language, advised Defendant that his administrative rights no longer applied and advised Defendant of his Consular rights. Defendant stated that he understood his Consular rights but did not wish to contact the Mexican Consulate.

At approximately 4:40 a.m., Defendant was advised of his Miranda rights in the Spanish language. Defendant stated that he understood his rights and was willing to answer questions with out

the presence of an attorney. During the interview, Defendant, in sum, admitted: he is a citizen of Mexico; he did not have any immigration documents that would permit him to work or reside in the United States; he entered illegally. Defendant also confirmed his immigration and criminal history.

The interview of Defendant was videotaped. A certified transcript of the videotaped interview is attached as an exhibit and a DVD containing the interview will be forwarded to chambers.

**III**

**POINTS AND AUTHORITIES**

**A. PRODUCTION OF DISCOVERY AND PRESERVATION OF EVIDENCE**

The United States has and will continue to fully comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act (18 U.S.C. § 3500), and Rule 16 of the Federal Rules of Criminal Procedure. To date, the United States has produced 99 pages of discovery to Defendant's counsel, including investigative reports and Defendant's statements. Also, the United States has produced a DVD of Defendant's post-arrest interview.

**1. Defendant's Statements**

The United States will disclose to Defendant the substance of any relevant oral statement made by Defendant, before or after arrest, in response to interrogation by a person Defendant knew was a government agent if the United States intends to use the statement at trial. The United States will also disclose and make available for inspection, copying or photographing the following: (1) any relevant written or recorded statement by the defendant if the statement is within the United States' possession, custody, or control, and the attorney for the United States knows--or through due diligence could know--that the statement exists,[1/] (2) that portion of any written record containing the substance of any relevant oral statement made before or after arrest if Defendant made the statement in response to interrogation by a person Defendant knew was a government agent, and (3) Defendant's recorded testimony before a grand jury relating to the charged offense, if any.

//

---

[1/] However, "the Government is not obligated by Rule 16(a) to anticipate every possible defense, assume what the defendant's trial testimony...will be, and then furnish the defendant with otherwise irrelevant material that might conflict with the defendant's testimony." United States v. Gonzalez-Rincon, 36 F.3d 859, 865 (9th Cir. 1994) (citation omitted).

**2. Arrest Reports and Notes**

The United States has already produced to Defendant all reports and notes known to the United States relating to Defendant's arrest in this case and will continue to comply with its discovery obligations.

**3. Brady Material**

The United States has complied and will continue to comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963).

**4. Prior Record**

The United States has provided Defendant with a copy of Defendant's known prior criminal record under Rule 16(a)(1)(D). See United States v. Audelo-Sanchez, 923 F.2d 129, 130 (9th Cir. 1990). Should the United States determine that there are any additional documents pertaining to Defendant's prior criminal record, those will be promptly provided to Defendant.

**5. 404(b) Material**

The United States will disclose, in advance of trial, the general nature of any "other bad acts" evidence that the United States intends to introduce at trial pursuant to Federal Rule of Evidence 404(b).

**6. Evidence Seized**

The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all evidence seized that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense or is intended for use by the United States as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant.

**7. Preservation of Evidence**

The United States has no opposition to a preservation order.

**8. Tangible Objects**

The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy tangible objects that are within its possession, custody, or control, and that is either material to the preparation of Defendant's defense or is intended for use by the United States as evidence during its case-in-chief at trial, or was

obtained from or belongs to Defendant. The United States, however, need not produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

**9. Witnesses**

The United States will provide a list of witnesses in its trial memorandum, including law enforcement witnesses. The grand jury transcript of any person who will testify at trial will also be produced.

**10. Jencks Act Material**

The United States will comply with its discovery obligations under the Jencks Act, Title 18, United States Code, Section 3500, and as incorporated in Rule 26.2.

**11. Giglio Material**

The United States has complied and will continue to comply with its discovery obligations under Giglio v. United States, 405 U.S. 150 (1972).

**12. Reports of Examinations and Tests**

The United States will provide Defendant with any scientific tests or examinations in accordance with Rule 16(a)(1)(F).

**13. Henthorn Material**

The United States will comply with its obligations under United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and request that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992)). If the undersigned Assistant U.S. Attorney is uncertain whether certain incriminating information in the personnel files is "material," the information will be submitted to the Court for an in camera inspection and review.

**14. Cooperating Witnesses**

At this time, the United States is not aware of any confidential informants or cooperating witnesses involved in this case. The Government must generally disclose the identity of informants where: (1) the informant is a material witness, and (2) the informant's testimony is crucial to the

defense. Roviaro v. United States, 353 U.S. 53, 59 (1957). If there is a confidential informant involved in this case, the Court may, in some circumstances, be required to conduct an in camera inspection to determine whether disclosure of the informant's identity is required under Roviaro. See United States v. Ramirez-Rangel, 103 F.3d 1501, 1508 (9th Cir. 1997). If the United States determines that there is a confidential informant or cooperating witness who is a material witness with evidence helpful to the defense or essential to a fair determination in this case, the United States will either disclose the identity of the informant or submit the informant's identity to the Court for an in camera inspection.

**15. Expert Witnesses**

The United States will comply with Rule 16(a)(1)(G) and provide Defendant with a written summary of any expert testimony that the United States intends to use during its case-in-chief at trial under Federal Rules of Evidence 702, 703 or 705.

**B. THE INDICTMENT SHOULD NOT BE DISMISSED**

Defendant contends that the Indictment must be dismissed or limited to a two year statutory maximum because the Indictment fails to allege that Defendant previously suffered a felony conviction. In accordance with United States v. Covian-Sandoval, 462 F.3d 1090 (9th Cir. 2006), the Indictment does allege that Defendant was removed from the United States subsequent to a date after a qualifying felony conviction. Thus, Defendant's contention fails.

In United States v. Covian-Sandoval, the Ninth Circuit Court of Appeals held that, in a prosecution for alien reentry after deportation in violation of 8 U.S.C. §1326, the judge cannot increase the defendant's sentence beyond the two-year maximum under §1326(a) unless the jury finds, or the defendant admits, that the deportation charged in the Indictment was subsequent to the date of a felony conviction. The Court explained that "because Covian admitted a particular-and different-date of removal at trial, it is clear that the removal allowing his conviction did not happen at a time subsequent to his felony conviction. Id. at 1098. Thus, to support an enhancement the deportation "must be proved beyond a reasonable doubt to a jury or admitted by the defendant." Id.

Following Covian, the Court, in United States v. Martinez-Rodriguez, 472 F.3d 1087 (9th Cir. 2007), addressed the situation in which the deportation is proved to a jury beyond a reasonable doubt. The Court affirmed a §1326(b) enhancement despite the absence of the date of the deportation in the

indictment, and held that the district court may properly impose an enhanced sentence under §1326(b) as long as the evidence at trial necessarily required a finding of a removal that postdated the conviction. Id. at 1094 ("We hold that the sentencing court did not erroneously find either the fact of prior removal or its date because the jury necessary found, beyond a reasonable doubt, that Martinez had been previously removed subsequent to his aggravated felony convictions.").

Thus, in the Ninth Circuit, where the date of an alien's deportation or removal is admitted by the defendant or found by the jury, a judge is permitted to find that the deportation was "subsequent to a felony conviction," because the "sequence" of events falls within the Almendarez-Torres exception to Apprendi for the "fact of a prior conviction." United States v. Lopez, 469 F.3d 1241, 1248 (9th Cir. 2006); United States v. Castillo-Rivera, 244 F.3d 1020, 1025 (9th Cir. 2001). However, where the deportation admitted by the defendant or proved to the jury was prior to the felony conviction, the judge is not permitted to find that there was a different deportation that was subsequent to the felony conviction, in order to increase the sentence under §1326(b). Covian-Sandoval, 462 F.3d at 1097 ("an enhanced sentence cannot be triggered under §1326(b) by a different removal that [the defendant] did not admit").

Here, Defendant was sentenced to two years of custody following his conviction for assault with a deadly weapon, in violation of California Penal Code § 245(a)(1), on June 4, 2004. Subsequent to this aggravated felony conviction, Defendant was deported from the United States to Mexico on two occasions, August 25, 2005 and February 27, 2006. The Indictment in the instant case alleges that Defendant "was removed from the United States subsequent to September 2, 2005." As such, if it is found by a jury or admitted by Defendant that Defendant was removed subsequent to the date alleged in the Indictment, the district court may then, under Almendarez-Torres, find that the deportation occurred subsequent to the aggravated felony conviction. Accordingly, the Indictment should not be dismissed.

//

//

//

//

**C. THE COURT SHOULD NOT SUPPRESS DEFENDANT'S STATEMENTS AND SHOULD NOT HOLD AN EVIDENTIARY HEARING**

Defendant moves to suppress statements and contends that his post-Miranda statements were involuntarily made, were not made after a knowing and intelligent Miranda waiver, and were made outside of the "Safe Harbor" time period. Further, Defendant contends that 18 U.S.C. § 3501 mandates an evidentiary hearing be held to determine whether Defendant's statements were voluntary. Defendant's motion to suppress statements should be denied without an evidentiary hearing because he failed to allege a specific factual dispute, and failed to support his contentions with a sworn declaration as required by CrimLR 47.1(g).

**1. Defendant Provided A Knowing, Intelligent, and Voluntary Miranda Waiver**

A statement made in response to custodial interrogation is admissible under Miranda v. Arizona, 384 U.S. 437 (1966), and 18 U.S.C. § 3501 if a preponderance of the evidence indicates that the statement was made after an advisement of Miranda rights, and was not elicited by improper coercion. See Colorado v. Connelly, 479 U.S. 157, 167-70 (1986) (preponderance of evidence standard governs voluntariness and Miranda determinations; valid waiver of Miranda rights should not be found in the "absence of police overreaching").

A valid Miranda waiver depends on the totality of the circumstances, including the background, experience, and conduct of the defendant. North Carolina v. Butler, 441 U.S. 369, 374-75 (1979). To be knowing and intelligent, "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986). The Government bears the burden of establishing the existence of a valid Miranda waiver. North Carolina v. Butler, 441 U.S. at 373. In assessing the validity of a defendant's Miranda waiver, this Courts should analyze the totality of the circumstances surrounding the interrogations. See Moran v. Burbine, 475 U.S. at 421. Factors commonly considered include: (1) the defendant's age (see United States v. Doe, 155 F.3d 1070, 1074-75 (9th Cir. 1998) (en banc) (valid waiver because the 17 year old defendant did not have trouble understanding questions, gave coherent answers, and did not ask officers to notify parents), (2) the defendant's familiarity with the criminal justice system (see United States v. Williams, 291 F.3d 1180, 1190 (9th Cir. 2002) (waiver valid in part

because defendant was familiar with the criminal justice system from past encounters), (3) the explicitness of the Miranda waiver (see United States v. Bernard S., 795 F.2d 749, 753 n.4 (9th Cir. 1986) (a written Miranda waiver is "strong evidence that the waiver is valid"); United States v. Amano, 229 F.3d 801, 805 (9th Cir. 2000) (waiver valid where Miranda rights were read to defendant twice and defendant signed a written waiver), and (4) the time lapse between the reading of the Miranda warnings and the interrogation or confession. See Guam v. Dela Pena, 72 F.3d 767, 769-70 (9th Cir. 1995) (valid waiver despite 15-hour delay between Miranda warnings and interview). Furthermore, if there are multiple interrogations, as occurred in this case, repeat Miranda warnings are generally not required unless an "appreciable time" elapses between interrogations. See United States v. Nordling, 804 F.2d 1466, 1471 (9th Cir. 1986).

Here, the agents scrupulously honored the letter and spirit of Miranda in carefully advising Defendant of his Miranda rights prior to any post-arrest custodial interrogation. Defendant was advised of his Miranda rights in his native language before the interrogation. Defendant orally agreed to waive his Miranda rights and there is no evidence that he was coerced or threatened in any way. Based on the totality of the circumstances, Defendant's statements should not be suppressed because his Miranda waiver was knowing, intelligent, and voluntary.

**2. Defendant's Statements Were Voluntary**

The inquiry into the voluntariness of statements is the same as the inquiry into the voluntariness of a waiver of Miranda rights. See Derrick v. Peterson, 924 F.2d 813, 820 (9th Cir.1990). Courts look to the totality of the circumstances to determine whether the statements were "the product of free and deliberate choice rather than coercion or improper inducement." United States v. Doe, 155 F.3d 1070, 1074 (9th Cir. 1998) (en banc).

A confession is involuntary if "coerced either by physical intimidation or psychological pressure." United States v. Crawford, 372 F.3d 1048, 1060 (9th Cir. 2004) (quoting United States v. Haswood, 350 F.3d 1024, 1027 (9th Cir. 2003)). In determining whether a defendant's confession was voluntary, "the question is 'whether the defendant's will was overborne at the time he confessed.'" Clark v. Murphy, 331 F.3d 1062, 1072 (9th Cir.), cert. denied, __ U.S. __, 124 S. Ct. 446 (2003) (quoting Haynes v. Washington, 373 U.S. 503, 513 (1963)). Psychological coercion invokes no per se

rule. United States v. Miller, 984 F.2d 1028, 1030 (9th Cir. 1993). Therefore, the Court must "consider the totality of the circumstances involved and their effect upon the will of the defendant." Id. at 1031 (citing Schneckloth v. Bustamonte, 412 U.S. 218, 226-27 (1973)).

In determining the issue of voluntariness, this Court should consider the five factors under 18 U.S.C. § 3501(b). United States v. Andaverde, 64 F.3d 1305, 1311 (9th Cir. 1995). These five factors include: (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he or she was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he or she was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his or her right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession. 18 U.S.C. § 3501(b). All five statutory factors under 18 U.S.C. § 3501(b) need not be met to find the statements were voluntarily made. See Andaverde, 64 F.3d at 1313.

As discussed above, Defendant was read his Miranda rights and Defendant explicitly stated that he understood his Miranda rights and agreed to waive those rights. See United States v. Gamez, 301 F.3d 1138, 1144 (9th Cir. 2002). Defendant's statements were not the product of physical intimidation or psychological pressure of any kind by any government agent. There is no evidence that Defendant's will was overborne at the time of his statements. Further, the agents exercised due care to ensure that Defendant was not intoxicated before advising him of his rights and interviewing him. Consequently, Defendant's motion to suppress his statements as involuntarily should be denied.

**3. Statements Obtained Outside of the Safe Harbor Time Period Are Admissible**

The Federal Rules of Criminal Procedure require that agents take an arrested defendant before a magistrate judge "without unnecessary delay." Fed. R. Crim. P. 5(a). Section 3501(b) directs courts to consider various factors in determining whether a suspect provided a voluntary confession, including "the time elapsing between arrest and arraignment of the defendant making the confession [...]." With regard to section 3501(c), the "safe harbor" provision, courts should not invalidate a confession taken within six hours after arrest or other detention solely on the basis of delay. United States v. Van Poyck,

77 F.3d 285, 288 (9th Cir. 1996), cert. denied, Van Poyck v. United States, 519 U.S. 912 (1996). However, even assuming *arguendo*, statements made outside this six-hour safe harbor period are not *per se* inadmissible, and "[t]he defendant bears the burden of proving grounds for exclusion" under section 3501(c). Van Poyck, 77 F.3d at 288 (citing United States v. Halbert, 436 F.2d 1226, 1230 (9th Cir. 1970)).

In the Ninth Circuit, it is well-settled that: "[w]e will admit a statement made outside of the safe harbor if the delay was reasonable or if public policy concerns weigh in favor of admission." United States v. Padilla-Mendoza, 157 F.3d 730, 731 (9th Cir. 1998) (citing Van Poyck, 77 F.3d at 289); see also United States v. Gamez, 301 F.3d 1138, 1143 (9th Cir. 2002) (31-hour delay was reasonable and public policy favored admission of defendant's statements). With regard to the reasonableness of the delay, a court may consider a weekend delay in arraigning a defendant due to the unavailability of a magistrate judge. Van Poyck, 77 F.3d at 289. With regard to public policy concerns, these "concerns include discouraging officers from unnecessarily delaying arraignments, preventing the admission of involuntary confessions, and encouraging early processing of defendants." Padilla-Mendoza, 157 F.3d at 731-732 (citing Van Poyck, 77 F.3d at 289).

Here, Defendant was apprehended in the field in the Campo, California area of operations some time after 3:30 p.m., on Saturday, April 26, 2008. After transportation to the Border Patrol Station and processing of Defendant as well as other individuals, BPA Franco began the process of conducting a videotaped interview of Defendant at approximately 8:40 p.m., April 26, 2008. After discovering that Defendant was under the influence of alcohol, agents ceased the interviewing process to enable Defendant an opportunity to "sober up." On Sunday, April 27, 2008, at approximately 4:35 a.m., after Defendant had "sobered up," agents reinitiated the interviewing process. Thereafter, on Monday, April 28, 2008, Defendant was arraigned by Magistrate Judge Stormes.

Given the facts and circumstances articulated above, there was no unusual delay in arraigning Defendant and could be characterized as quite common in the Southern District of California. Further, there is no evidence to suggest that this delay was "engineered" by any law enforcement personnel for the purpose of eliciting further incriminating statements or otherwise delaying Defendant's arraignment. Lastly, Defendant has failed to articulate facts that support a conclusion that there was an unreasonable

delay in interviewing or arraigning him, or that public policy concerns weigh in favor of a determination that his statements were involuntary and thus inadmissible.

**4. Defendant's Motion To Suppress Should Be Denied Without An Evidentiary Hearing**

This Court can and should deny (without prejudice) Defendant's motion to suppress statements without an evidentiary hearing because Defendant failed to (a) allege a specific factual dispute, and (b) provide a sworn declaration in support of his motion to suppress.

**(a) Defendant Failed To Allege a Specific Factual Dispute**

An evidentiary hearing is required if a defendant's motion to suppress and supporting declarations or affidavits fail to allege a specific factual dispute. See United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986) (an evidentiary hearing is required "if the moving papers are definite, specific, detailed and nonconjectural to enable the court to conclude that contested issues of [material] fact . . . are at issue"). Where a defendant fails to provide a specific factual dispute of any material fact, the Court is not required to hold an evidentiary hearing. See United States v. Howell, 231 F.3d 616, 620-23 (9th Cir. 2000) (holding that "[a]n evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist."); United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) (District Court is not required to hold an evidentiary hearing where "defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer"); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (finding that the motion to suppress was "akin to boilerplate motions that lay no factual foundation" and that the unsworn representations of counsel were "too indefinite and conjectural to require the government to respond"); United States v. Feola, 651 F. Supp. 1068, 1119 (S.D. N.Y. 1987), aff'd without decision, 875 F.2d 857 (2d Cir. 1989) (denying motion for Miranda hearing to determine admissibility of confession where there was "no real allegation of [] police coercion").

Defendant failed to specifically identify the statements that he seeks to suppress or allege any specific factual or legal dispute regarding the admissibility of the statements. Defendant did not allege that the agents failed to advise Defendant of his Miranda rights, that the Miranda rights provided were

somehow defective, that his Miranda waiver was not knowingly, intelligently, or voluntarily made, or that the statements were involuntarily coerced by the agents. In essence, Defendant's motion to suppress lacks sufficient definiteness, clarity, and specificity to enable the Court to rule on this motion to suppress statements.

**(b) Defendant's Motion Is Not Supported By Declaration As Required By CrimLR 47.1(g)**

Where a defendant fails to submit a declaration in support of the factual allegations in a motion in accordance with local rules -- such as CrimLR 47.1(g)(1) for this Court -- the Court need not grant an evidentiary hearing. See United States v. Wardlow, 951 F.2d 1115, 1116 (9th Cir. 1991) (District Court did not abuse its discretion in denying evidentiary hearing because defense counsel's declaration was insufficient to meet the requirements of the local rules for the Central District of California which requires motions be supported by a declaration signed by an individual who is competent to testify about the facts); Moran-Garcia, 783 F. Supp. at 1268-74 (District Court for the Southern District of California had discretion to deny an evidentiary hearing when the defendant's suppression motion was not supported by a declaration of an individual who had personal knowledge of the events). Local Rule 47.1(g)(1) provides that all "[c]riminal motions requiring a predicate factual finding shall be supported by declaration(s)."

Here, Defendant has failed to support his allegations with a declaration as required by CrimLR 47.1(g). As such, this Court should deny Defendant's motion to suppress.

**D. LEAVE TO FILE FURTHER MOTIONS**

The United States does not oppose Defendant's request to file further motions if they are based on new discovery or other information not available to Defendant at the time of this motion hearing.

//

//

//

//

//

//

**IV**

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court deny Defendant's motions except where unopposed.

DATED: September 4, 2008

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

*/s/ Paul L. Starita*

PAUL L. STARITA
Assistant U.S. Attorney
Attorneys for Plaintiff
United States of America
Email: paul.starita@usdoj.gov

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. GABRIEL YANEZ-AYALA, Defendant. | ) | Criminal Case No. 08CR1629-BEN<br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, PAUL L. STARITA, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of United States' Response and Opposition to Defendant's Motions to: (1) compel discovery; (2) dismiss indictment; (3) suppress statements; and (4) grant leave to file further motions, together with statement of facts and memorandum of points and authorities on the following by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Sylvia Baiz, Esq.
   Attorney for Defendant

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

1. N/A.

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 4, 2008.

*/s/ Paul L. Starita*
PAUL L. STARITA

SOUTHERN DISTRICT OF CALIFORNIA

U.S. ATTORNEY'S OFFICE

FORENSIC BILINGUAL
TRANSCRIPTION AND TRANSLATION

Interview on Digital Video File

**US V. YANEZ-AYALA**
**08CR1629-BEN**

Prepared for Assistant U.S. Attorney Paul L. Starita

Certified by Carlos M. Izquierdo, USCCI
Language Specialist and Chief Interpreter
U.S. Attorney's Office

**SUMMARY**

Gabriel Yanez-Ayala, a defendant in an illegal re-entry case, is interviewed in Spanish. The interview, which is reproduced on a DVD, is transcribed and translated below.

The numbers in the middle column reflect the time as played back on Start-Stop Powerplay.

**LEGEND**

| | |
|---|---|
| YAN: | DEFENDANT GABRIEL YANEZ-AYALA |
| FRA: | BORDER PATROL AGENT GEORGE FRANCO |
| ZEL: | BORDER PATROL AGENT ARTHUR ZELLER |
| GAL: | BORDER PATROL AGENT EDGAR GALLEGOS |
| MEN: | BORDER PATROL AGENT MENDIVIL |

| | |
|---|---|
| [IA]: | INAUDIBLE |
| [UI]: | UNINTELLIGIBLE |
| [PH]: | PHONETIC |

| | |
|---|---|
| /: | Two or more words separated by a "/" are options, due to lack of clarity or specificity in the original language. |
| [ ]: | Text within brackets are inserts by the translator to aid in comprehension. After "you", [*pl*] indicates the plural form used in Spanish. |
| ...: | Pause in utterance. Unfinished or interrupted. |

| | |
|---|---|
| ***Italics:*** | ***Source language is English*** |
| **Normal Font:** | **Source language is Spanish** |

***Some words in the English translation may have been purposely distorted and/or grammatical errors created, so as to reflect Spanish language errors or deficiencies. These words are some times followed by the notation "[sic]."***

I, Carlos M. Izquierdo, certified by the ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS, under Certificate Number 95-041, as qualified for translating court proceedings in Spanish, declare that, to the best of my ability, on or about July 10th, 2008, in San Diego, CA, I corrected and certified the transcription in Spanish and translation into English of the interview found on the recording, whose full contents appear below.

Carlos M. Izquierdo
Chief Interpreter; U.S. Attorney's Office, San Diego, CA

| TRANSCRIPTION | Time | Speaker | TRANSLATION |
|---|---|---|---|
| *The following is a statement under oath before Border Patrol Agent George Franco, witnessed by Border Patrol Agent Arthur Zeller, at the Campo Border Patrol Station in Campo, California. The statement is being given by defendant Yanez-Ayala, Gabriel, in the case of US vs. Yanez-Ayala, Gabriel. Today's date is April 26, 2008, and the time is 8:40 p.m. Both agents are in uniform with no weapons visible.* Señor, ¿quiere hablar conmigo en inglés o Español? | 00:00:09 | **FRA** | *The following is a statement under oath before Border Patrol Agent George Franco, witnessed by Border Patrol Agent Arthur Zeller, at the Campo Border Patrol Station in Campo, California. The statement is being given by defendant Yanez-Ayala, Gabriel, in the case of US vs. Yanez-Ayala, Gabriel. Today's date is April 26, 2008, and the time is 8:40 p.m. Both agents are in uniform with no weapons visible.* Sir, do you want to speak with me in English or Spanish? |
| Español. | | **YAN** | Spanish. |
| Señor, los siguientes a... avisos de derechos y sus declaraciones están siendo grabadas en audio y video. ¿Entiende? | | **FRA** | Sir, the following no... notifications of rights and your statements are being recorded in audio and video. Do you understand? |
| Umjú. | | **YAN** | Uh-huh. |
| ¿Está usted bajo la unf... influencia de algunas drogas o alcojol [sic] en este tiempo? | | **FRA** | Are you under the unf... influence of any drugs or alcohol at this time? |
| Alcohol, puro alcohol. Me estaba tomando un [ui] de vino. | | **YAN** | Alcohol, only alcohol. I was having a [ui] of wine. |
| ¿Pero en este tiempo? | 00:01:09 | **FRA** | But at this time? |
| 'Horita cuando me agarraron. | | **YAN** | When I got caught a while ago. |
| Pero en este tiempo, ahora, ¿[ui]... | | **FRA** | But at this time, now, [ui]... |
| Eh, sí. | | **YAN** | Uh, yes. |
| ¿Sí? ¿Es [sic] borracho? | | **FRA** | Yes? Is [sic] you drunk? |
| Sí, pues cuando me agarraron 'taba tomando yo. | | **YAN** | Yes, when I got caught I was drinking. |
| *That... This will conclude the sworn statements of Yanez-Ayala, Gabriel. He has admitted to be in... under the influence of alcohol.* | | **FRA** | *That... This will conclude the sworn statements of Yanez-Ayala, Gabriel. He has admitted to be in... under the influence of alcohol.* |
| [Continuation of the interview] | | | [Continuation of the interview] |

| TRANSCRIPTION | | | TRANSLATION |
|---|---|---|---|
| *The following is an advisal [sic] of rights and subsequent interview. Yanez-Ayala, Gabriel is been advised that the previously explained admin rights per DHS form at 8:26 no longer apply, since criminal prosecution has been authorized. The current date and time is April 27, 04:40 p.m. I, Border Patrol Agent Egdar Gallegos, would be conducting this interview, witnessed by Border Patrol Agent Mendivil. Both agents are in full uniform with no weapons visible.* El siguiente aviso de derechos y sus declaraciones están siendo grabadas en audio y video. ¿Entiende usted, señor? | 00:01:33 | **GAL** | *The following is an advisal [sic] of rights and subsequent interview. Yanez-Ayala, Gabriel is been advised that the previously explained admin rights per DHS form at 8:26 no longer apply, since criminal prosecution has been authorized. The current date and time is April 27, 04:40 p.m. I, Border Patrol Agent Egdar Gallegos, would be conducting this interview, witnessed by Border Patrol Agent Mendivil. Both agents are in full uniform with no weapons visible.* The following notification of rights and your statements are being recorded in audio and video. Do you understand, sir? |
| Sí. | | **YAN** | Yes. |
| ¿Está usted bajo la influencia de drogas o alcohol? | | **GAL** | Are you under the influence of drugs or alcohol? |
| Alcohol nomás. Estaba pues. | | **YAN** | Only alcohol. Well, I was. |
| ¿Está usted ahora bajo la influencia de drogas o alcohol? | | **GAL** | Are you now under the influence of drugs or alcohol? |
| No. | 00:02:39 | **YAN** | No. |
| ¿Está ute... usted completamente sobrio en este momento? | | **GAL** | Are yo... you completely sober at this moment? |
| Sí. | | **YAN** | Yes. |
| ¿Tiene usted algún problema mental? | | **GAL** | Do you have any mental problems? |
| No. | | **YAN** | No. |

| TRANSCRIPTION | | | TRANSLATION |
|---|---|---|---|
| Al principio le dieron un aviso de derechos en el cual usted pidió regresar a su país lo más pronto posible. Esos derechos se aplican solamente en procedimientos de Inmigración para deportarle de los Estados Unidos. Ahora hay un cambio en su caso y usted no podrá regresar a su país hasta ser procesado por crímenes federales. Usted debe de entender que los derechos administrativos ya no se aplicarán en su caso. De ahora en adelante solamente los siguientes derechos criminales aplicarán en su caso. ¿Entiende usted ése, eh... esos derechos? | | **GAL** | At the beginning you were given a notification of rights in which you requested to return to your country as soon as possible. Those rights only apply in Immigration proceedings to deport you from the United States. Now there's a change in your case and you won't be able to return to your country until you're processed for federal crimes. You must understand that the administrative rights no longer apply to your case. From now on only the following criminal rights will apply in your case. Do you understand that, uh... those rights? |
| Sí. | 00:03:19 | **YAN** | Yes. |
| Hace algunas horas, se le dio el mismo aviso de derechos, usted dijo que estaba borracho. ¿Entendemos eso? ¿Se le dio tiempo para que usted se pusiera sobrio? ¿Ya no está borracho? | | **GAL** | Some hours ago, you were given the same notification of rights, you said you were drunk. Do we understand that? Were you given time to sober up? You're no longer drunk? |
| No. | | **YAN** | No. |

| TRANSCRIPTION | | | TRANSLATION |
|---|---|---|---|
| Okey. Antes de que le hagamos cualquier pregunta, usted debe de compens... comprender sus derechos. Usted tiene el derecho de guardar silencio. Cualquier cosa que usted diga puede ser usada en su contra en un juzgado de leyes o en cualquier procedimiento administrativo o de Inmigración. Usted tiene el derecho de hablar con un abogado para que él lo aconseje antes de que le hagamos alguna... alguna pregunta y de tenerlo presente con usted durante las preguntas. Si usted no tiene el dinero para emplear a un abogado, se le puede proporcionar uno antes de que le hagamos alguna pregunta, si usted lo desea. Si usted decide contestar nuestras preguntas ahora sin tener un abogado presente, siempre usted tendrá el derecho de dejar de contestar nuestras preguntas. Usted también tiene el derecho de dejar de contestar cuando usted guste hasta que usted pueda hablar con un abogado. ¿Entiende usted sus derechos? | 00:04:14 | **GAL** | Okay. Before we ask you any questions, you must compens... understand your rights. You have the right to remain silent. Anything you say can be used against you in court of law or in any Immigration or administrative proceedings. You have the right to speak with an attorney so that he can advise you before we ask you any... any questions and to have him present with you during the questions. If you don't have the money to hire an attorney, one can be supplied to you before we ask you any questions, if you wish. If you decide to answer our questions now without having an attorney present, you will always have the right to stop answering our questions. You also have the right to stop answering whenever you wish until you can speak with an attorney. Do you understand your rights? |
| Sí. | | **YAN** | Yes. |
| Yo soy un Agente Federal de los Estados Unidos, autorizado por la ley para tomar declaraciones bajo juramento. Mi intención es tomar su declaración tocante a su entrada ilegal a los Estados Unidos. ¿Quiere usted un abogado presente para que le aconseje a usted durante su entrevista? ¿No? ¿Está usted dispuesto a contestar nuestras preguntas ahora? | | **GAL** | I'm a United States Federal Agent, authorized by law to take statements under oath. My intention is to take your statement related to your illegal entry into the United States. Do you want an attorney present to advise you during your interview? No? Are you willing to answer our questions now? |
| Sí. | | **YAN** | Yes. |
| ¿Jura usted decir la verdad, la verdad entera y nada más que la verdad, que Dios lo ayude? | 00:05:02 | **GAL** | Do you swear to tell the truth, the whole truth and nothing but the truth, so help you God? |
| Sí. | | **YAN** | Yes. |
| ¿Cuál es su nombre correcto y completo? | | **GAL** | What's your correct and complete name? |
| Grabiel Yañez-Ayala. | | **YAN** | Grabiel Yanez-Ayala. |

| TRANSCRIPTION | | | TRANSLATION |
|---|---|---|---|
| ¿En qué día, mes y año nació usted? | | GAL | On what day, month and year where you born? |
| El 25 de marzo del 77. | | YAN | On March 25 of '77. |
| ¿Dónde nació usted? | | GAL | Where were you born? |
| Jalisco. | | YAN | Jalisco. |
| ¿En qué pueblo? | | GAL | In what town? |
| San Felipe. | | YAN | San Felipe. |
| ¿En qué país? | | GAL | In what country? |
| México. | | YAN | Mexico. |
| ¿De qué país es us... es usted ciudadano? | | GAL | What country are yo... are you a citizen of? |
| [Yawns]<br>Jalisco, México. | | YAN | [Yawns]<br>Jalisco, Mexico. |
| ¿De qué país? | 00:05:58 | GAL | Of what country? |
| M... Pues México. | | YAN | M... Well, Mexico. |
| ¿Tiene usted o alguna vez ha tenido documentos de Inmigración para entrar, vivir o trabajar legalmente en los Estados Unidos? | | GAL | Do you have or have you ever had Immigration documents to enter, live or work legally in the United States? |
| No. | | YAN | No. |
| ¿Cuándo entró usted a los Estados Unidos la última vez? | | GAL | When did you enter the United States the last time? |
| ¿La última vez? | | YAN | The last time? |
| Esta vez. | | GAL | This time. |
| ¿Esta vez? | | YAN | This time? |
| Ésta es la última vez, ¿verdad? | | GAL | This is the last time, right? |
| Sí, ésta es la última vez. | | YAN | Yes, this is the last time. |
| ¿Cuándo? | | GAL | When? |
| Pues el... ¿Cuándo fue? Ahora... ayer. | | YAN | Well, the... When was it? Today... yesterday. |
| [ui]. | 00:06:31 | GAL | [ui]. |
| [Voices overlap] | | | [Voices overlap] |
| Sábado. | | YAN | Saturday. |
| ¿Cómo y por dónde entró usted a los Estados Unidos? | | GAL | How and through where did you enter the United States? |

| TRANSCRIPTION | | | TRANSLATION |
|---|---|---|---|
| Por ahí por... No me acuerdo cómo se llama el pueblito ése. Ta... Por Tecate. | | YAN | Through there by... I don't remember what that little town is called. Ta... Through Tecate. |
| Cuando saltó usted la... cruzó usted la línea fronteriza, ¿hay barda o... o no hay barda? | | GAL | When you jumped the... you crossed the border line, is there a fence or... or there's no fence? |
| No hay. | | YAN | There isn't. |
| ¿Pero sabe usted perfectamente que las... está del lado americano, verdad? ¿Ha sido deportado o removido usted de los Estados Unidos por un juez de Inmigración? | | GAL | But do you perfectly know that the... you're on the American side, right? Have you been deported or removed from the United States by an Immigration judge? |
| No. | | YAN | No. |
| ¿No ha sido deportado? | | GAL | You haven't been deported? |
| ¿Por un juez? No, nunca he ido a Corte. | 00:07:19 | YAN | By a judge? No, I have never been to court. |
| ¿Nunca fue a ver un... a... a... a ve... a ver un juez? | | GAL | You never went to see a... to... to... to se... to see a judge? |
| No. | | YAN | No. |
| ¿En el 2006? | | GAL | On 2006? |
| Eh, no. Nomás me dieron la salida. | | YAN | Uh, no. I was just given departure. |
| ¿Voluntaria? | | GAL | Voluntary? |
| Sí. | | YAN | Yes. |
| En tu record estás [sic] que has sido deportado. | | GAL | In your record you are [sic] that you have been deported. |
| Sí, pero de la prisión. Me aventaron nomás pa'fuera. | | YAN | Yes, but from prison. I was just thrown out. |
| Desde el 94 te han estado deportando. | | GAL | Since 94 they have been deporting you. |
| ¿Ah? ¿Del 94? | | YAN | Huh? Since 94? |
| Sí. ¿No... | | GAL | Yes. And... |
| No. | | YAN | No. |
| ¿No te acaban de sacar... te acaban de re... de... de hacer un *re-instate* en el, ah... | 00:08:00 | GAL | And weren't you simply taken out... just re... a *re-instate* was done on you, uh... |
| [ui]. | | YAN | [ui]. |
| [Voices overlap] | | | [Voices overlap] |
| ... el mes pasado? ¿Eh? | | GAL | ... last month? Huh? |
| Desde el 94 no me han deportado. | | YAN | I haven't been deported since 94. |

| TRANSCRIPTION | | | TRANSLATION |
|---|---|---|---|
| El 21 de... de este mes... | | GAL | The 21st of... of this month... |
| Sí, pues... | | YAN | Yes, because... |
| ... te acaban de sacar otra vez a México. | | GAL | ... you were just taken out again to Mexico. |
| ... acabo de salir de la pri... de la prisión, de La Pinta. | | YAN | ... I just got out of pri... of prison, of La Pinta. |
| Umjú. ¿Y todavía sigues con que no estás siendo deportado –no... no ha sido deportado nunca? | | GAL | Uh-huh. And you're still going on that you're not being deported –not being deported ever? |
| Pues tú me estás diciendo que de un juez, ¿no? | | YAN | Well, you're telling me about a judge, right? |
| Ajá. | | GAL | Ah-hah. |
| De un juez no. No, no he visto al juez. No he ido a corte yo. Nomás me dieron la salida así: firmar y...<br>[Onomatopoetic sound]<br>... pa'fuera. | 00:08:34 | YAN | Not by a judge. No, I haven't seen the judge. I haven't been to court. I was just given departure like this: sign and...<br>[Onomatopoetic sound]<br>... out. |
| ¿Por dónde entraste en aquella ocasión cuando te re... te removieron la última vez? | | GAL | Where did you enter through that time when you were re... removed the last time? |
| Por Tecate. | | YAN | Through Tecate. |
| ¿Sabías que es ilegal entrar a los Estados Unidos después de s... de que te han deportado? | | GAL | Did you know it's illegal to enter the United States after be... you have been deported? |
| Sí. | | YAN | Yes. |
| ¿Entonces entiendes que has sido deportado las, eh... las veces anteriores? ¿Sabes que estás todavía bajo probación por tu última entrada a los Estados Unidos? | | GAL | So you understand that you have been deported the, uh... the previous times? Do you know that you're still on probation for your last entry into the United States? |
| Sí. | | YAN | Yes. |
| Cada vez que te han deportado te han dicho por cuánto tiempo te han deportado, ¿verdad? | 00:09:31 | GAL | Every time you've been deported you've been told for how long you're being deported, right? |
| Esta vez nomás. | | YAN | Only this time. |
| ¿Esta vez cuánto te dijeron? | | GAL | How much did they tell you this time? |
| 20. | | YAN | 20. |
| 20 años. | | GAL | 20 years. |
| No puedo venir por 20 años. | | YAN | I can't come over for 20 years. |

| TRANSCRIPTION | | | TRANSLATION |
|---|---|---|---|
| ¿Y sabes que para deportarte por 20 años, te tenemos que deportar primero por 5, por 10 y por... y luego por 20? ¿Entonces cuántas veces te han deportado ya? | | **GAL** | And do you know that for us to deport you for 20 years, we have to deport your first for 5, for 10 and for... and then for 20? So how many times have you already been deported? |
| Nomás, de... La primera vez que salí, no me dijeron nada porque fue salida voluntaria. No me dijeron nada. Salí yo en el 2005. | | **YAN** | Only, uh... The first time that I got out, I wasn't told anything because it was voluntary departure. I wasn't told anything. I got out on 2005. |
| Umjú. Y en el 2006. | | **GAL** | Uh-huh. And on 2006. |
| Sa... salí el... el 2005, el 2006. | | **YAN** | I got... I got out on... on 2005, on 2006. |
| En el 2006 ya te deportaron. | | **GAL** | You were already departure on 2006. |
| Sí. | 00:10:05 | **YAN** | Yes. |
| Okey. ¿Sabes que... que tu entrada ilegal en esta ocasión es una violación a tu probación? | | **GAL** | Okay. Do you know that... that your illegal entry this time is a violation of your probation? |
| Sí. | | **YAN** | Yes. |
| ¿Hacia dónde es... te... te dirigías? | | **GAL** | Where were yo... were... were you headed? |
| Pa' Los Angeles. | | **YAN** | To Los Angeles. |
| ¿Con qué... ¿Por cuánto tiempo te ibas a quedar allá? | | **GAL** | For what... For how long were you going to stay there? |
| [UI] unos 2, 3 años. | | **YAN** | [UI] around 2, 3 years. |
| ¿Con qué propósito entraste a los Estados Unidos otra vez? | | **GAL** | With what purpose did you enter the United States again? |
| A trabajar. Tengo 15 años trabajando en lo mismo. | | **YAN** | To work. I've been working in the same thing for 15 years . |
| ¿A qué te dedicas? | | **GAL** | What do you do for a living? |
| Cortando árboles. | | **YAN** | Cutting trees. |
| ¿A qué? | 00:10:48 | **GAL** | What? |
| Cortando árboles. | | **YAN** | Cutting trees. |
| ¿Te agarraron en... en el 97 con... con drogas? ¿Otra vez en el 99? | | **GAL** | Did you get caught in... in '97 with... with drugs? Again in '99? |
| Simón. | | **YAN** | Yeah. |
| ¿Que no fuiste a la corte? | | **GAL** | You didn't go to court? |
| Sí. | | **YAN** | Yes. |

| TRANSCRIPTION | | | TRANSLATION |
|---|---|---|---|
| Por exhibir una... una arma mortal en el 99. ¿Qué tipo de arma era? | | GAL | For displaying a... a lethal weapon on 99. What type of weapon was it? |
| ¿Arma? No recuerdo. | | YAN | Weapon? I don't remember. |
| Te dieron 30 días en la cárcel. | | GAL | You were given 30 days in jail. |
| ¿Qué sería? ¿Una navaja? | | YAN | What would it have been? A knife? |
| ¿En el 2000 por... por andar bajo la influe... la influencia de drogas y alcohol? | | GAL | On 2000 for... for being under the influe... the influence of drugs and alcohol? |
| Umjú. | | YAN | Uh-huh. |
| ¿Y una falsa identificación? | | GAL | And a fake identification? |
| Sí. | | YAN | Yes. |
| ¿Otra vez en el 2000 por lo mismo? En el 2002 por andar con drogas también. 2003 otra vez. ¿Qué hiciste en el 2003 que te dieron 6 meses de *ja*... de... de cárcel? | 00:12:16 | GAL | Again in 2000 for the same thing? In 2002 for drug possession too. Again in 2003. What did you in 2003 that you were given 6 months of *ja*... of... of prison? |
| *Probation.* | | YAN | *Probation.* |
| No, pero te dieron... te dieron 2 años por, ah, algo con armas. ¿Qué hiciste? | | GAL | No, but you were given... you were given 2 years for, uh, something with weapons. What did you do? |
| Oh, me peleé con un bato. | | YAN | Oh, I had a fight with some dude. |
| Okey. ¿Reconoces tu archivo criminal? ¿Tienes miedo de persecución o tortura si eres regresado a Mexico? | | GAL | Okay. Do you recognize your criminal record? Are you afraid of persecution or torture if you're returned to Mexico? |
| No. | | YAN | No. |
| ¿Tienes algo más que quieras aglar... agregar a tu declaración? | | GAL | Do you have anything else that you'd like to aglar... to add to your statement? |
| Nada. | | YAN | Nothing. |
| *This concludes this interview. The time is 04:51 a.m.* | | GAL | *This concludes this interview. The time is 04:51 a.m.* |
| **[End of interview]** | | | **[End of interview]** |
| **[End of transcription]** | | | **[End of translation]** |